1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ISLAND VIEW RESIDENTIAL TREATMENT CENTER, ANNA L., THOMAS L., and ANDREW L., <br><br> Plaintiffs, <br><br> vs. <br><br> KAISER PERMANENTE, and KAISER PERMANENTE TRADITIONAL PLAN FOR SMALL BUSINESS, <br><br> Defendants. | Case No:  C 09-03921 SBA <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** <br><br> Dkt. 30, 32, 54, 68 |

Plaintiffs Island View Residential Treatment Center ("Island View"), Anna L. ("Anna"), Thomas L. ("Thomas"), and Andrew L. ("Andrew") bring the instant action under the Employee Retirement Income Security Act ("ERISA") against Defendant Kaiser Foundation Health Plan ("Kaiser") to recover expenses incurred for Andrew's eleven-month stay at the Island View in Utah in 2005-2006.  Island View was previously dismissed by stipulation of the parties.

The parties are presently before the Court on cross-motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56.  Dkt. 30, 32.  Having read and considered the papers submitted, the Court hereby DENIES Plaintiffs' motion and GRANTS Kaiser's motion based on Plaintiffs' failure to exhaust administrative remedies.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I.      **BACKGROUND**

A.      **FACTUAL SUMMARY**

Plaintiffs Anna and Thomas are residents of Antioch, California, and are the parents of Andrew, who was a minor during the pertinent time-period.  Jt. Stmt. of Undisputed Facts Re Parties' Cross-Mots. For Summ. J. ("Facts") ¶ 1, Dkt. 41.  Thomas became a Kaiser member under the Kaiser Permanente Traditional Plan for Small Business ("the Plan") through his employer, Lamother Cleaners.  Id. ¶ 4.  Kaiser is a non-profit California health maintenance organization licensed under California's Knox-Keene Health Care Plan Service Act, Cal. Health & Safety Code § 1340, et seq.  Id. ¶ 2.  Andrew has been a Kaiser member under his father's Plan since February 1, 2003.  Id.

1.      **Summary of the Plan**

The Plan provides its members with coverage for a variety of "Services," including "Mental Health Services."  Facts ¶ 15.  Coverage for Services generally is provided where they are deemed (1) Medically Necessary[1], (2) the Services are ordered by a Plan Physician[2], and (3) the Plan member receives the Services from a Plan Provider, unless authorized.  Id. ¶ 14.  In the section entitled "How to Obtain Services," the Plan states:

> As a Member, you are selecting our medical care program to provide your health care. You must receive all covered care from Plan Providers Inside our Service Area, except as described in the following sections about:
>
> - Getting a referral, in this section.
> - Emergency Care, Post-stabilization Care, and Out-of-Area Urgent Care, in the "Emergency, Urgent and Routine Care" section.
> - Emergency ambulance Services described under "Ambulance Services" in the "Benefits, Copayments, and Coinsurance" section.

---

[1] "Medically Necessary" means: "A Service is Medically Necessary if it is medically appropriate and required to prevent, diagnose, or treat your condition or clinical symptoms in accord with generally accepted professional standards of practice that are consistent with a standard of care in the medical community."  Facts ¶ 8.

[2] "Plan Physician" is defined as:  "Any licensed physician who is an employee of Medical Group, or any licensed physician who contracts to provide Services to Members (but not including physicians who contract only to provide referral Services)."  Facts ¶ 9.

Id. ¶ 11.  The Plan provides the following information about obtaining a referral for an out-of-network provider, such as Island View:

> **Getting a Referral**
>
> ….
>
> **Medical Group authorization procedure for certain referrals**
>
> The following Services require prior authorization by Medical Group for the Services to be covered:
>
> - **Services not available from Plan Providers**.  If your Plan Physician decides that you require covered Services not available from Plan Providers, he or she will recommend to the Medical Group that you be referred to a non-Plan Provider inside or outside our Service Area. The appropriate Medical Group designee will authorize the Services <u>if he or she determines that they are Medically Necessary but not available from the Plan Provider</u>.

Id. ¶ 12 (emphasis added).

The Plan includes a section on "Dispute Resolution," which sets forth a procedure for submitting grievances to Kaiser "for any issue."  Id. ¶ 18. This section provides, in relevant part, as follows:

> **Grievances**
>
> We are committed to providing you with quality care and with a timely response to your concerns if an issue arises. Our Member Service representatives are available to discuss your concerns at most Plan Facilities or you can call our Member Service Call Center.
>
> <u>You can file a grievance for any issue. Your grievance must explain your issue, such as the reasons why you believe a decision was in error or why you are dissatisfied about Services you received. You may submit your grievance orally or in writing</u> as follows:
>
> - To a Member Services representative at your local Member Services Department at a Plan Facility (please refer to Your Guidebook for locations)
> - Through our Web site at www.kaiserpermanente.org
> - To the following location for claims described under "Non-Plan Emergency Care, Post-stabilization Care, or Out-of-Area Urgent Care" in the "Requests for Payment or Services" section:
>
>       Kaiser Permanente Kaiser Permanente
>       Special Services Unit
>       P.O. Box 23280

**1**

> We will send you a confirmation letter within five days after we receive your grievance. We will send you our written decision within 30 days after we receive your grievance. If we deny your grievance in whole or in part, our written decision will fully explain why we denied it and additional dispute resolution options.

**2**

**3**

**4**

Facts ¶ 18 (emphasis added).  Where a member believes that the grievance concerns a

**5**

matter involving an "imminent and serious" health threat, severe pain or loss of life or other

**6**

bodily function, the member may request expedited consideration of the grievance.

**7**

Stipulated Record ("Record") Vol. II, K001218.

**8**

### 2.     Andrew's Treatment History

**9**

Andrew has a documented history of serious emotional and behavioral disorders.

**10**

During 2004-2005, Andrew received inpatient and outpatient medical treatment through

**11**

Kaiser, including treatment for mental health disorders and chemical dependency.  Id. ¶ 24.

**12**

Andrew's treatment included outpatient care and treatment at Kaiser facilities, as well as

**13**

authorized inpatient care and treatment at out-of-Plan facilities.  Id.

**14**

On June 8, 2005, Dr. Marilyn O'Connor, a Kaiser psychologist in the Adolescent

**15**

Chemical Dependency Department, had her first session with Andrew.  Id. ¶ 26.  At that

**16**

time, Andrew agreed to attend a dual-diagnosis program for twelve weeks and to attend

**17**

sessions with Dr. Mary Anne Beach, another Kaiser psychologist, in Antioch, California.

**18**

Id.  Andrew's mother, Anna, agreed both with this treatment plan and to attend Dr. Beach's

**19**

parent group in lieu of the dual-diagnosis parent group.  Id.  Neither Andrew nor his mother

**20**

completely abided by the treatment plan, however.  Id. ¶ 28.[3]  Of the twelve scheduled

**21**

**22**

---

**23**  [3] In June 2005, Dr. Beach documented her conversations with Andrew's parents, then separated, who expressed concerns for their personal safety based on Andrew's methamphetamine use and threats of violence against them.  Record Vol. II, K001345.  She
**24**  urged Thomas not to press charges because she believed that it would undermine the progress Andrew was making.  Id.  Andrew's mother reported that Andrew was "very
**25**  agitated," had punched a hole in the wall of her home and threatened her with violence.  Id. at K001346.  Dr. Beach advised that Anna to contact the police and seek a commitment
**26**  under California Welfare & Institutions Code § 5150 if she believed that Andrew posed a danger to himself of others.  Id.  Dr. O'Connor's progress notes from July 2005 likewise
**27**  indicate that Anna had to lock herself in her to protect herself from Andrew.  Id. at K001321.  She "strongly urged" Anna to call the police if Andrew repeated his aggressive
**28**  behavior.  Id.

1    group sessions, Andrew attended only five sessions, the last of which took place on August

2    2, 2005.  Id. ¶ 27.  Dr. O'Connor noted Andrew and his parents' absence from the program

3    sessions, and that she had received "no response … from family" with regards to their

4    failure to attend group sessions.  Id. ¶ 28.

5        On September 20, 2005, Anna requested that Dr. Beach write a letter recommending

6    residential treatment for Andrew.  Id. ¶ 29.  During a telephone conference, Dr. Beach told

7    Anna that she would not provide a letter recommending residential treatment for Andrew,

8    and that if they chose residential treatment, "this is a decision they are making on their

9    own."  Id.  In addition, Dr. Beach and Dr. O'Connor advised Andrew's parents that long-

10   term residential treatment was not a covered benefit.  Id. ¶ 31.  It is undisputed by the

11   parties that no one at Kaiser authorized out-of-Plan residential treatment for Andrew at

12   Island View.  Id. ¶ 31.  In addition, Plaintiffs did not submit any complaint to Kaiser taking

13   exception to Dr. Beach and Dr. O'Connor's statements that residential treatment was not a

14   covered benefit or Dr. Beach's denial of Andrew's mother's request for a referral for Island

15   View.

16       On November 4, 2005, Andrew's father, Thomas, called Andrew's primary care

17   physician at Kaiser, Dr. Ricardo Navarette, and left a message requesting a referral for

18   residential treatment for Andrew.  Pls.' Mot. at 14, Dkt. 32.  There is no indication in the

19   record concerning whether Dr. Navarette received or responded to Thomas' request.  On

20   the same date, Thomas called Kaiser Member Services to notify Kaiser that he and Anna

21   were admitting Andrew to Island View.  Facts ¶ 37.  Thomas asked the customer service

22   representative assisting him whether Kaiser would cover the Island View's expenses, even

23   though Kaiser had not authorized the placement.  Id.  The representative responded that

24   Kaiser only covers non-Plan emergency and urgent care and that neither routine nor follow

25   up care were covered.  Id.

26       Andrew's parents admitted him to Island View on November 10, 2005, where he

27   remained until September 21, 2006.  Facts ¶ 40, 41.  On December 9, 2005, Kaiser began

28   receiving invoices from Island View for Andrew's treatment.  Id. ¶¶ 43, 44.  However,

1  Kaiser rejected the claims submitted by Island View.  Record Vol. I, K000015, K000039,

2  K000064, K000089, K000112, K000114, K000135, K000145, K000147.

3      On March 7, 2006, Island View sent Kaiser a letter requesting that Kaiser provide

4  coverage for Andrew for his treatment.  Id. K000639.  On August 24, 2006, Island View

5  sent Kaiser a follow up letter stating that it had received no response to its "appeal" from

6  March 7, 2006, but offered Kaiser an additional thirty days to review the matter.  Id., LAM

7  00682-00683.  On August 30, 2006, Kaiser acknowledged receipt of Island View's August

8  24, 2006 letter, and stated that it would respond within forty-five days unless additional

9  information were required, in which case additional time would be required to resolve the

10  matter.  Id., LAM 00684; Id. Vol. II, K001121.

11      On September 26, 2006, Kaiser wrote to Island View to deny its claim, stating that

12  "the services received were not authorized by a Plan physician and are therefore not

13  payable by [Kaiser]."  Id. Vol. I, LAM 00689.  On January 8, 2007, Kaiser informed Island

14  View that it had "re-reviewed the above-referenced claim for services" and concluded that

15  it was "not payable" because the services did not meet "the Emergency Benefit Criteria of

16  the Members Evidence of Coverage."  Id. Vol. II, K001125.

17      **B.    PROCEDURAL HISTORY**

18      Plaintiffs filed the instant action in the District of Utah on or about January 12, 2009.

19  The Complaint alleges a single claim for recovery of benefits under ERISA, 29 U.S.C.

20  § 1132(a)(1)(b).  On April 1, 2009, the claims of Island View were dismissed upon

21  stipulation of the parties.  See Def.'s Request for Judicial Notice, Ex. A, Dkt. 40.

22      On August 21, 2009, the district court in Utah granted Kaiser's motion to transfer

23  venue, pursuant to 28 U.S.C. § 1404(a).  See 8/25/09 Order, Dkt. 1-4.  The parties

24  subsequently filed their cross-motions for summary judgment along with a Joint Statement

25

26

27

28

**1**    of Undisputed Facts ("Facts") and a Stipulated Record.  Dkt. 30, 32, 41.  In addition, the

**2**    parties have submitted declarations, to which each has interposed objections.[4]

**3**    ## II.      LEGAL STANDARD

**4**         Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if

**5**    there is no genuine issue as to any material fact and the moving party is entitled to

**6**    judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48

**7**    (1986).  The moving party bears the initial burden of demonstrating the basis for the motion

**8**    and identifying the portions of the pleadings, depositions, answers to interrogatories,

**9**    affidavits, and admissions on file that establish the absence of a triable issue of material

**10**    fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets this

**11**    initial burden, the burden then shifts to the non-moving party to present specific facts

**12**    showing that there is a genuine issue for trial.   Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at

**13**    324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

**14**         "On a motion for summary judgment, 'facts must be viewed in the light most

**15**    favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'"

**16**    Ricci v. DeStefano, -- U.S. --, 129 S.Ct. 2658, 2677 (2009) (quoting Scott v. Harris, 550

**17**    U.S. 372, 380 (2007)). An issue of fact is "material" if, under the substantive law of the

**18**    case, resolution of the factual dispute might affect the outcome of the claim.  See Anderson,

**19**    477 U.S. at 248.  Factual disputes are genuine if they "properly can be resolved in favor of

**20**    either party."  Id. at 250. Accordingly, a genuine issue for trial exists if the non-movant

**21**    presents evidence from which a reasonable jury, viewing the evidence in the light most

**22**    favorable to that party, could resolve the material issue in his or her favor.  Id.  "If the

**23**    evidence is merely colorable, or is not significantly probative, summary judgment may be

**24**

---

**25**        [4] In addition to their joint statement of undisputed facts, both parties have submitted
declarations setting forth additional information.  Plaintiffs have filed a motion to strike as
**26**    to certain of Kaiser's declarations on the ground that they present information beyond the
prelitigation record.  Dkt. 54.  Kaiser also has objected to certain of Plaintiffs' evidence in
**27**    support of their motion.  Dkt.  68. The Court's ruling is not dependent upon any of the
disputed evidence.  Therefore, Plaintiffs' motion to strike is denied and Kaiser's objections
**28**    are overruled as moot.

1  granted."  Id. at 249-50 (internal citations omitted).  Only admissible evidence may be

2  considered in ruling on a motion for motion for summary judgment.  Fed.R.Civ.P. 56(e);

3  Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002).[5]

4  **III.    DISCUSSION**

5         Although ERISA itself does not include an administrative exhaustion requirement,

6  the Ninth Circuit has long required "that a claimant must avail himself or herself of a plan's

7  own internal review procedures before bringing suit in federal court."  Diaz v. United Agr.

8  Employee Welfare Ben. Plan and Trust, 50 F.3d 1478, 1483 (9th Cir. 1995); accord Vaught

9  v. Scottsdale Healthcare Corp. Health Plan, 546 F.3d 620, 626 (9th Cir. 2008) ("we long

10 ago concluded that 'federal courts have authority to enforce the exhaustion requirement in

11 suits under ERISA, and that as a matter of sound public policy they should usually do so.'")

12 (quoting Amato v. Bernard, 618 F.2d 559, 568 (9th Cir. 1980)).  The purposes of the

13 exhaustion requirement are "the reduction of frivolous litigation, the promotion of

14 consistent treatment of claims, the provision of a nonadversarial method of claims

15 settlement, the minimization of costs of claim settlement and a proper reliance on

16 administrative expertise."  Diaz, 50 F.3d at 1483.  The failure to exhaust constitutes

17 grounds for dismissal, without prejudice.  Id. at 1486; e.g., Glaus v. Kaiser Found. Health

18 Plan, C 09-2232 MMC, 2009 WL 2905961, at *1 (Sept. 8, 2009) (dismissing ERISA action

19

20

---

21         [5] The issue of exhaustion under ERISA has been addressed in the context of rulings
on summary judgment motions.  E.g., Sarraf v. Standard Ins. Co., 102 F.3d 991, 992 (9th
22 Cir. 1996) (affirming summary judgment in ERISA action based on failure to exhaust).  In
other contexts, however, the Ninth Circuit has held that because a failure to exhaust is not a
23 decision on the merits, such a challenge should be brought as an unenumerated motion to
dismiss under Rule 12(b), as opposed to a motion for summary judgment under Rule 56.
24 See Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368-69 (9th
Cir. 1988) ("failure to exhaust nonjudicial remedies should be raised in a motion to dismiss,
25 or be treated as such if raised in a motion for summary judgment").  Unlike a motion for
summary judgment, "[i]n deciding a motion to dismiss for failure to exhaust non-judicial
26 remedies, the court may look beyond the pleadings and decide disputed issues of fact."
Wyatt v. Terhune, 315 F.3d 1108, 1119-20 (9th Cir. 2003).  In this case, however,
27 resolution of the exhaustion issue does not turn on any disputed factual issues.  Therefore,
resolution of the instant motions remains the same irrespective of which Federal Rule of
28 Civil Procedure is applied.

1  brought against Kaiser where plaintiff failed to exhaust administrative remedies by first

2  submitting a grievance as specified in the plan).

3          In the instant case, the Plan sets forth a straightforward grievance procedure for

4  members to "file a grievance for any issue."  Record Vol. I, K 001217.  Members simply

5  are asked to explain the reasons they believe a decision is in error or why they were

6  dissatisfied with the Services rendered.  Id.  The grievance can be made verbally or in

7  writing, and may be presented to a Member Services representative, through Kaiser's

8  website or to Kaiser's post office box.  Id.  Where a member believes that the grievance

9  concerns a matter involving an "imminent and serious" health threat, severe pain or loss of

10  life or other bodily function, the member may request expedited consideration of the

11  grievance.  Id. K 001218.  Where an expedited grievance is requested, Kaiser is required to

12  inform the member of its decision within seventy-two hours.  Id.

13          Plaintiffs concede that they never filed any grievance to challenge the decision of

14  Kaiser not to approve their request for a referral to place Andrew at Island View or at any

15  time after his placement there.  Instead, Plaintiffs contend that they should be excused from

16  the exhaustion requirement based on Kaiser's alleged failure to follow proper claims

17  procedures.  See Pls.' Mot. at 23-25; Pls.' Opp'n at 12-16.  As support, Plaintiffs cite

18  29 C.F.R. § 2560.503-1(l), which states:

19          (l) *Failure to establish and follow reasonable claims*
            *procedures*.  In the case of the failure of a plan to establish or
20          follow claims procedures consistent with the requirements of
            this section, a claimant shall be deemed to have exhausted the
21          administrative remedies available under the plan and shall be
            entitled to pursue any available remedies under section 502(a)
22          of the Act on the basis that the plan has failed to provide a
            reasonable claims procedure that would yield a decision on the
23          merits of the claim.

24  (Emphasis added).  This regulation applies to situations where a claimant has not received a

25  timely response to an administrative appeal from a denial of benefits.  See LaAsmar v.

26  Phelps Dodge Corp. Life, Accidental Death & Dismemberment and Dependent Life Ins.

27  Plan, 605 F.3d 789, 798 (10th Cir. 2010) (noting that the purpose of 29 C.F.R. § 2560.503-

28  1(l) is to protect claimants by ensuring that "the administrative appeals process does not go

1    on indefinitely."). In those instances, the claimant is deemed to have exhausted his or her

2    administrative remedies under the benefits plan and may proceed with legal action. E.g.,

3    Kowalski v. Farella, Braun & Martel, LLP, C 06-3341 MMC, 2007 WL 1342475, at *4

4    (N.D. May 7, 2007) ("because defendants failed to issue a decision within 90 days of

5    receipt of plaintiff's appeal, plaintiff is deemed to have exhausted her administrative

6    remedies.") (citing 29 C.F.R. § 2560.503-1(l)).

7          Plaintiffs argue that Kaiser failed to issue a written denial of coverage, ostensibly as

8    required by 29 C.F.R. § 2560.503-1(g), when Drs. Beach and O'Connor allegedly misstated

9    that residential treatment was not a covered. Pls.' Opp'n at 12-14.[6] According to Plaintiffs,

10   such statements should have been accompanied by a written notice explaining the available

11   procedures "to challenge [their] inaccurate statements …." Id. at 14. This contention lacks

12   merit. As an initial matter, the grievance procedures are clearly spelled out in the Plan,

13   which Plaintiff admittedly received. See Glaus, 2009 WL 2905961, at *1 (lack of

14   explanation in the Summary Plan Description regarding internal grievance procedure did

15   not excuse failure to exhaust where the plan afforded claimants notice of the grievance

16   process). Moreover, § 2560.503-1(l) is not germane, given the circumstances presented.

17   As noted, a claim is deemed exhausted under § 2560.503-1(l) where the claimant has not

18   received a timely response to an appeal from the denial of coverage. That situation is

19   presented in this case, where Plaintiffs never submitted a grievance or otherwise sought any

20   administrative review of Kaiser's decision not to issue a referral for residential treatment in

21   the first instance. To the extent that Plaintiffs believed that Dr. Beach had erred in

22   declining their request for a referral to Island View or that they were given erroneous

23   advice regarding the availability of coverage for residential treatment, they should have

24   submitted a grievance, as directed by the Plan.

25

26

27       [6] ERISA regulations provide that "the plan administrator shall provide a claimant
     with written or electronic notification of any adverse benefit determination." 29 C.F.R.
28   § 2560.503-1(g).

1
2
3
4
5
6
7
8
9
10
11
12

Plaintiffs maintain that they "did not realize that Dr. Beach's refusal to refer Andrew to [Island View] was a denial of coverage." Pls.' Reply at 8, Dkt. 72. But whether or not Dr. Beach's refusal to issue a referral qualified as a denial of coverage is not the issue. The record establishes that Plaintiffs knew that a referral from a Plan Physician was necessary to ensure that the cost of Andrew's placement at Island View would be covered by Kaiser. In particular, Plaintiffs were informed by Dr. Beach and a Kaiser customer service representative that, absent a referral, Plaintiffs would bear the cost of treatment for services provided by Island View. Thus, to the extent that Plaintiffs disagreed with Dr. Beach's refusal to provide a referral, it was incumbent upon them to submit a grievance regarding Dr. Beach's decision. Moreover, even after Plaintiffs became aware that Kaiser was rejecting Island View's requests for payment, Plaintiffs never resorted to the grievance procedures set forth in the Dispute Resolution section of the Plan.

13
14
15
16
17
18
19
20
21
22
23
24
25
26

As an ancillary matter, Plaintiffs point out that although they did not submit a grievance to Kaiser, "[Island View] did appeal Kaiser's denial of coverage and the denial responding to the March, 2006, appeal was not issued until January 2007," beyond the time limit specified in the Plan. Pls.' Mot. at 24. Island View's appeal is inapposite to the issue of whether <u>Plaintiffs</u> exhausted their administrative remedies. Island View's claims were dismissed by stipulation of the parties. Though Island View's March 2006 letter states that Plaintiffs assigned their claims as of November 3, 2005, that assignment was invalid. Record Vol. I, K000646. The Plan precludes a member of assigning his or her rights absent the prior consent of Kaiser. Facts ¶ 19 ("You may not assign this [Evidence of Coverage] or any of the rights, interests, claims for money due, benefits, or obligations hereunder without our prior written consent."). Since Kaiser did not consent to the assignment, Island View was acting solely on its own behalf—not Plaintiffs'. Thus, facts pertaining to Island View's attempts to obtain payment from Kaiser do not bear upon Plaintiffs' obligation to exhaust their administrative remedies under the Plan.

27
28

1

## IV.   CONCLUSION

2       The Court concludes that Plaintiffs have failed to exhaust their administrative

3   remedies and that they are not excused from that requirement.  Where a court concludes

4   administrative remedies have not been exhausted, the unexhausted claim should be

5   dismissed without prejudice.  Wyatt, 315 F.3d at 1120.  Because the Court's ruling does not

6   adjudicate the Complaint on its merits, further litigation certainly is possible in this matter.

7   Given the facts underlying Plaintiffs' claim, however, it is in the parties' mutual interest to

8   resolve their dispute without resort to further litigation.  Accordingly,

9       IT IS HEREBY ORDERED THAT Kaiser's motion for summary judgment is

10  GRANTED and Plaintiffs' motion for summary is DENIED.  Plaintiffs' ERISA claim is

11  DISMISSED WITHOUT PREJUDICE.  The Clerk shall close the file and terminate all

12  pending matters.

13      IT IS SO ORDERED.

14  Dated:  March 31, 2011                                   _____
                                                            SAUNDRA BROWN ARMSTRONG
15                                                          United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28